**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

THOMAS LEE FARMER
REGISTER NO. 07225-029,

    **Plaintiff,**

v.            **Civil Action No. 5-24-cv-00221-JPB-JPM**

UNITED STATES OF AMERICA;
FEDERAL BUREAU OF PRISONS;
WARDEN R. BROWN–FEDERAL
CORRECTIONAL INSTITUTION
GILMER (FCI–GILMER);and
CHIEF MEDICAL OFFICER OF HEALTH
SERVICES DEPARTMENT–FEDERAL
CORRECTIONAL INSTITUTION GILMER
(FCI–GILMER),

    **Defendant.**

**AMENDED COMPLAINT**

  Plaintiff, Thomas Lee Farmer, by counsel, Robert W. Hinzman and HINZMAN LAW, PLLC, files this Complaint against Defendants in this civil action and alleges as follows:

**NATURE OF THE ACTION**

1. **Plaintiffs cause of action arises under the Federal Tort Claim Act pursuant to 28 U.S.C. § 2671, *et seq.*, 18 U.S.C. § 4042, 28 U.S.C. § 1331, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and Eighth Amendment prohibition against cruel and unusual punishment.**

2. Plaintiff is seeking compensatory damages, past and future; damages for physical pain and permanent injury, emotional distress, loss of enjoyment of life,

embarrassment, loss of dignity; transfer to a medical correctional facility; attorneys'
costs and fees; all other damages allowed under West Virginia law; and any other
damages the Court deems reasonable and necessary.

**PARTIES**

3.      Plaintiff Thomas Lee Farmer, Register No. 07225-029, is an inmate at the
Federal Bureau of Prisons Correctional Institution–Gilmer located in Glenville, Gilmer
County, West Virginia.

4.      Defendant United States of America, through the federal Bureau of Prisons
(BOP), at all times alleged herein is the federal governing agency of the United States of
America responsible for the custody and care of federal inmates. The Federal
Correctional Institution (FCI) – Gilmer ("FCI Gilmer), is a medium security federal
correction facility located in Glenville, Gilmer County, West Virginia, and is one of many
federal correction facilities operated by the Bureau of Prisons throughout the United
States.

5.      Defendant Warden R. Brown–Federal Correctional Institution Gilmer,
alleged herein is the chief supervisory official responsible for the custody and care of
federal inmates at the federal correction institution facility located in Glenville, Gilmer
County, West Virginia.

6.      Defendant Chief Medical Officer– Federal Correctional Institution Gilmer, at
all times alleged herein is the chief medical supervisory official responsible for the medical
care of federal inmates at the federal correction institution facility located in Glenville,
Gilmer County, West Virginia.

**JURISDICTION AND VENUE**

7.      This Court has jurisdiction pursuant to **28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)** as this matter involves federal laws and federal officers and 28 U.S.C. § 1346(b) as federal district courts have exclusive jurisdiction over federal tort claims filed by federal inmates.

8.      Pursuant to 28 U.S.C. §1391(e), venue is proper in the Judicial District where a substantial number of the events involved occurred or where the Plaintiff resides, if there is no real property at issue. All the acts and omissions which give rise to the claims occurred in the Northern District of West Virginia.

9.      Plaintiff has complied in all manners with the internal BOP Administrative Remedy Process to include filing a complaint form BP-8, BP-9, BP-10, BP-11, and the filing of an Administrative Remedy Request to the Regional Office and Administrative Remedy Request to the Central Office .

10.     Plaintiff has complied in all manners with the filing notice of a Standard Form 95 Federal Tort Claim Act (FTCA) claim in attempt to reach an administrative settlement under the FTCA, 28 U.S.C. § 2671, *et seq*., and such claim reached a final denial on May 29, 2024. **Exhibit A.** *See* also Tort Claim No. TRT-MXR-2024-02137. **Exhibit B.**

**FACTUAL BACKGROUND**

11.     Plaintiff is a 72-year-old federal inmate incarcerated at FCI Gilmer. Plaintiff has been in federal custody since on or about 1994 and is serving a life sentence.

12.     On April 25, 2022, Plaintiff was taken to Stonewall Jackson Memorial

Hospital emergency department located in Weston, West Virginia for chest pain. He was diagnosed as having a heart attack and was subsequently transported to West Virginia University (WVU) University Hospital Center ("UHC") located in Bridgeport, West Virginia.

13. On April 26, 2022, while at UHC, Plaintiff underwent a heart catheterization, and it was determined that Plaintiff suffered from multivessel coronary artery disease (MVD) and likely needed coronary bypass surgery.

14. On April 29, 2022, Plaintiff was transferred to Mon Health Medical Center located in Morgantown, West Virginia and on May 4, 2022, Plaintiff underwent a double coronary artery bypass surgery performed by cardio thoracic surgeon Dr. Alexander A. Nagy.

15. Plaintiff remained in hospital until May 10, 2022 at which time he was discharged and returned to FCI Gilmer.

16. Upon discharge, Plaintiff's treating physician ordered that Plaintiff  follow up with the cardiothoracic surgeon, Dr. Nagy, on May 26, 2022, but Defendants never provided for the medical visit.

17. Upon discharge, Plaintiff's treating physician that Plaintiff follow-up with cardiac electrophysiologist, Dr. Salam A. Sbaity in one to two weeks following discharge because Plaintiff developed atrial fibrillation ("Afib") and atrial flutter ("A-flutter") post-surgery, but Defendants never provided for the medical visit.

18. Upon discharge, and because of the Plaintiff's Afib and A-flutter conditions described in Paragraph 17, Plaintiff's treating physician ordered that Plaintiff be prescribed Metoprolol (generic for Lopressor). Plaintiff was prescribed 200 mg daily (100 mg two times a day), but Defendants only provided Plaintiff a daily total of 25 mg.

19.    Upon discharge, Plaintiff's treating physician ordered that Plaintiff have post-surgery cardiac rehabilitation, but Defendants did not provide for the rehabilitation medical care until one year later in May 2023.

20.    Upon discharge, Plaintiff's treating physician ordered that Plaintiff be prescribed Nitroglycerin for chest pain, but Defendants never provided for the medicine at that time or anytime near then.

21.    Upon discharge, Plaintiff's treating physician ordered that Plaintiff continue the use of an incentive spirometer and a post-operative splint (commonly referred to as a 'Teddy Bear') which is used to reduce chest pain when coughing, but Defendants did not provide, and or prohibited Plaintiff from using, said medical devices.

22.    Upon discharge, it was determined that Plaintiff needed additional cardiology procedure (Percutaneous Coronary Intervention (PCI)/i.e., additional stents) because it could not be performed during the heart surgery. The PCI/stent procedure was planned for a target date of June 22, 2022.

23.    On September 9, 2022, two months after the target date, Plaintiff underwent the follow up heart catheterization (PCI/stent) with cardiologist Dr. Wissam Gharib at Mon Health Medical Center.

24.    Following the PCI/stent procedure, Dr. Gharib ordered a follow-up appointment with the Plaintiff in one month, but the Defendants did not provide for the appointment until eight months later on May 18, 2023.

25.    Following the PCI/stent procedure, Dr. Gharib ordered that Plaintiff wear a heart monitor for thirty days, but the Defendants did not provide for the ordered monitoring.

26.    Following the PCI/stent procedure, Dr. Gharib ordered that Plaintiff have 18-36 sessions of cardiac rehabilitation with telemetry monitoring and oxygen monitoring, stating it was "required and medically necessary" because Plaintiff was "high risk," but Defendants did not provide for the first session of this medical treatment until eight months later on May 8, 2023.

27.    Following the PCI/stent procedure, Dr. Gharib ordered that Plaintiff have a stress test, but Defendants did not provide for this examination until two years later on September 12, 2024.

28.    Following the PCI/stent procedure, Dr. Gharib instructed Plaintiff to always carry and use Nitroglycerin for angina (i.e., chest pain). Plaintiff was not provided Nitroglycerin as prescribed for another sixteen months (see next paragraph).

29.    Following the May 10, 2022 discharge from heart surgery, Plaintiff complained about chest pain to Defendants on May 23, 2022, November 15, 2022, January 31, 2023, March 29, 2023, August 7, 2023, and September 20, 2023.  The Plaintiff's treating cardiac physicians ordered Nitroglycerin post-surgery in May 2022 and post-stenting in September 2022, but Defendants did not provide Plaintiff Nitroglycerin until December 1, 2023.

30.    On March 22, 2023, Plaintiff  submitted an Informal Resolution request (BP-8) to Unit Manager R.A. Clem advising that his medical condition had worsened and requesting to be transferred to a federal BOP medical center. Unit Manager Clem responded on April 6, 2023 by stating "*You are and have received outside medical treatment*" and that Plaintiff had been reviewed for a medical facility by central office but the Unit Manager provided Plaintiff no other information. **Exhibit C.**

31.     On April 12, 2023, Plaintiff submitted a Request for Administrative Remedy form (BP-9) regarding his medical condition to the Unit Manager, but did not receive a response. **Exhibit D.**

32.     On May 8, 2023, one year after being ed rehabilitation post-surgery, and eight months after being ordered rehabilitation post PCI/stent procedure, Plaintiff had his first cardiac rehabilitation appointment. Of the 18-36 sessions ordered, Defendants only provided 8 rehabilitation sessions to Plaintiff which occurred from May-July 2023.

33.     On May 18, 2023, Plaintiff was provided a cardiac appointment. This was the first cardiac appointment Plaintiff was provided since the heart surgery. Dr. Gharib ordered Plaintiff to have certain cardiac treatment as it was "required and medically necessary," but Defendants did not provide for the treatment as prescribed. This included, prescribing Plaintiff long-acting nitrate medicine, but this was not provided by Defendant BOP medical services until three months later on August 10, 2023. Additionally, Dr. Gharib ordered to see the Plaintiff again in six months, but Defendants never provided for the visit.

34.     On May 29, 2023, Plaintiff submitted a Request for Administrative Remedy form (BP-10) regarding his medical condition to the Unit Manager, but did not receive a response. **Exhibit E.**

35.     On July 29, 2023, Plaintiff submitted a Request for Administrative Remedy form (BP-11) regarding his medical condition to Central Office, and on August 17, 2023 Plaintiff received a letter from Central Office rejecting the request because the previous forms submitted were not worded alike and because there was no evidence of Plaintiff previously filing a BP-9 at the institution level. **Exhibit F.**

36.     On September 11, 2023, Plaintiff submitted a Second Request for Administrative Request (BP-9) regarding his medical condition to the Unit Manager, but did not receive a response. **Exhibit G.**

37.     On November 3, 2023, Plaintiff submitted a Sensitive BP-10 because he believed that his prior submitted administrative requests were being blocked, delayed, or destroyed by the Unit Manager R.A. Clem, or some other staff member, because he had not received any responses to his previously submitted BP-9 forms regarding his medical condition and because the Unit Manager had made statements regarding shredding BP forms. **Exhibit H.**

38.     On December 13, 2023, Plaintiff received a Regional Office administrative remedy rejection notice from Unit Manager R.A. Clem. The rejection notice was dated November 15, 2023, and stamped as received at Gilmer on November 22, 2023. The notice stated that the Plaintiff's appeal was being rejected because there was no evidence of Plaintiff previously filing a BP-9 at the institution level. **Exhibit I.**

39.     On January 2, 2024, Plaintiff filed a Standard Form 95 administrative claim for injury, pursuant to the FTCA. **Exhibit J.**

40.     On February 1, 2024, Plaintiff reported to Gilmer health services for "sharp" chest pain and was eventually transported to Stonewall Jackson Memorial Hospital emergency department. Upon discharge it was recommended that Plaintiff have a cardiac follow up and a stress test.

41.     On February 2, 2024, the BOP Health Services at Gilmer requested an "urgent" offsite consult for a nuclear stress test for the Plaintiff; however, Plaintiff was not provided a stress test until seven months later.

42.    On May 29, 2024, Plaintiff received a notice that his federal tort claim for injury was denied. **Exhibit K.**

43.    On July 16, 2024, Plaintiff reported to Gilmer health services for stabbing chest pain and chest pain when breathing.

44.    On July 19, 2024, Plaintiff reported to Gilmer health services for continual chest pain and discomfort.

45.    On September 12, 2024, seven months later from when ordered, Plaintiff was finally provided a nuclear stress test and was ordered to follow up with his cardiology providers. Plaintiff continues to wait for a cardiac follow-up appointment.

46.    Plaintiff simultaneously has been suffering from a keloid infection since at least August 2021.

47.    Plaintiff was repeatedly prescribed antibiotics to treat the keloid infection and on November 15, 2022 BOP health services requested an offsite consult for dermatology for a chronic keloid infection.

48.    Plaintiff did not see a dermatology specialist until 23 months later on October 7, 2024. In the twenty-three months wait, Plaintiff endured numerous courses of antibiotics and on May 24, 2024 Plaintiff was prescribed antibiotics daily and uninterrupted until he was provided access to a dermatologist nearly two years later.

### Count I-Negligence

49.    Plaintiff incorporates all prior paragraphs of the Complaint as if fully set forth herein verbatim.

50.    Defendants owed Plaintiff a duty to provide access to the medical care and personnel in order to properly evaluate his medical conditions and to provide him with

care which met the standard of care required of and necessary to Plaintiffs medical conditions.

51.     Defendants owed Plaintiff a duty to provide access to the medical care and personnel in order to provide the necessary treatment and follow-on treatment that had been prescribed by Plaintiff's treating physicians.

52.     Defendants owed Plaintiff a duty to provide access to the medical care and personnel in order to provide for the medical equipment and medicine that had been prescribed by Plaintiff's treating physicians.

53.     Defendants owed Plaintiff a duty to provide access to the medical care and personnel in order to provide the necessary post-operative care, monitoring, and rehabilitation that had been ordered by Plaintiff's treating physicians.

54.     Defendants breached their duty to provide access to medical care and personnel in order to provide the timely scheduling of and transportation to necessary medical care external to the correctional facility.

55.     Defendants breached their duty to provide access to medical care and personnel in order to provide care that ensured Plaintiffs condition was not being ignored or deviated from as prescribed and ordered as set forth herein.

56.     Defendants breached their duty to provide access to medical care and personnel in order to ensure that Plaintiffs care was not delayed or prohibited as provided herein.

57.     Defendants breached their duty by ignoring Plaintiffs complaints and reminders and administrative remedy requests to access treatment and by acting with deliberate indifference towards Plaintiff's medical needs.

58.     As a direct result of Defendants' negligence set forth herein Plaintiff has suffered prolonged pain, prolonged rehabilitative recovery, and aggravated injury.

59.     As a direct and proximate result of Defendants' negligence set forth herein Plaintiff has suffered pain, physical scarring, mental anguish, loss of activity, loss of enjoyment of life, embarrassment, and loss of dignity.

60.     Defendants' actions, conduct, and or failures to act constitute, gross negligence and a willful, wanton and reckless disregard and deliberate indifference for the well-being of the Plaintiff, so an award of damages is appropriate.

### Count II-Violation of Eighth Amendment Protection from Cruel and Unusual Punishment

61.     Plaintiff incorporates all prior paragraphs of the Complaint as if fully set forth herein verbatim.

62.     Defendants demonstrated a deliberate indifference to Plaintiff's medical condition and failed to provide Plaintiff with the administrative access to post-surgical medical equipment necessary for recovery and rehabilitation.

63.     Defendants demonstrated a deliberate indifference to Plaintiff's medical condition and needs by interfering with Plaintiff's access to necessary medication.

64.     Defendants demonstrated a deliberate indifference to Plaintiff's medical condition and needs by not providing and unreasonably delaying ordered medical examinations/evaluations with cardiac specialists.

65.     Defendants demonstrated a deliberate indifference to Plaintiff's medical condition, needs, and requests by not acting on, responding to, or destroying Plaintiff's internal written requests for administrative remedy.

66.     As a direct and proximate result of Defendants' deliberate indifference set forth herein, Plaintiff has suffered prolonged pain, prolonged recovery and rehabilitation, physical illness, mental anguish, and loss of activity, enjoyment of life, embarrassment, and loss of dignity.

67.     Defendants' actions, inactions, and failures following Plaintiff's surgery in May 2022 demonstrate a willful and deliberate indifference to Plaintiff's medical condition and needs and constitute a violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

**68.     Plaintiff provides herewith sworn affidavits in support of his complaint set forth herein. Exhibit L**.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants for:

1.     Compensatory damages, past and future;

2.     Damages for physical injury, emotional distress, mental anguish, loss of enjoyment of life, embarrassment, loss of dignity, past and future;

3.     Attorneys' costs and fees; and

4.     All other damages as allowable under West Virginia law.

**PLAINTIFF RESPECTFULLY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**THOMAS LEE FARMER**
**BY COUNSEL,**

/s/ Robert W. Hinzman
Robert W. Hinzman (#14373)
HINZMAN LAW, PLLC
150 Pleasant Street
PO Box 11
Morgantown, WV 26507

Telephone: (304) 381-5529
Facsimile: (304) 381-5650